[Crim. No. 1210. Third Appellate District.—June 16, 1932.]

THE PEOPLE, Respondent, v. ERVIN TRUESDELL, Appellant.

Leola M. Buck for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

PLUMMER, Acting P. J.—On the fourteenth day of March, 1932, an information was filed in the Superior Court of Placer County containing three counts, charging the defendant with three different acts constituting the crime of rape perpetrated upon the person of a girl of the age of fifteen years, not the wife of the defendant, and, also, charging the defendant with a prior conviction of a felony.

The defendant upon arraignment plead guilty to the prior conviction of a felony, not guilty as to the three charges contained in the information, and went to trial thereon, which resulted in a verdict of guilty on all three of the counts contained in the information.

This appeal is prosecuted from the denial of the defendant's motion for a new trial and the judgment of conviction based upon the verdict of the jury.

A considerable portion of appellant's brief relates to acts and circumstances not set forth in the transcript, such as the attitude of the court, the demeanor of counsel for the People, and what we may call the adverse atmosphere in the courtroom attendant upon the trial. We have carefully read every word contained in the reporter's transcript and fail to discover anything therein in support of appellant's contention in the foregoing particulars. We have not been able to find a single remark of the trial court indicating a disposition to give the defendant other than the fairest possible trial, nor do we find any remarks of the trial court to which the defendant objected and to which any tenable

objections could be made. In fact, the transcript is singularly clear from any adverse comments by the trial court or any words contained in the rulings upon the admission of testimony, which in the slightest, reflect upon the character of the defendant or indicate any adverse prejudice or preconceived notions or intimations as to the guilt of the defendant by the judge presiding at the trial.

We may admit that all fair-minded men have a natural and an instinctive aversion toward a defendant charged with polluting the person of a young girl. In this particular we may state that the evidence shows that the acts of the defendant were consummated by the use of some degree of force and always with threats of bodily injury, in case of resistance or subsequent disclosures of the offenses. Notwithstanding what we have said as to such natural aversion, we have not been able to find a single word or sentence used by the trial court indicating any hostile feeling toward the defendant, or which can be construed to indicate that a fair and impartial trial was not being accorded the defendant, although charged with a loathsome offense.

Although the argument of the appellant specifies a number of errors committed on the part of the trial court, an examination of the testimony shows that only in one or two particulars, which we will examine hereafter, was there any objection made to the introduction of testimony, or any motion made to strike out the testimony after it was admitted. The record shows that during the course of the argument for the People, reference was made to the contents of a certain letter, or rather as to the testimony of the defendant concerning the contents of a letter, which was written, as testified by the prosecuting witness, upon the dictation of the defendant asking an aunt for the sum of $50. The letter itself was denied admission, but the testimony as to the writing of the letter, for the purpose for which it was written, and the request for the sum of $50, $25 to be given to the defendant, $25 to the prosecutrix and the plan to go to San Francisco all appear to have been introduced in testimony without objection, which laid the basis for the reference to these facts, even though the letter itself was not admitted in testimony.

 Again, it is argued that the jury was summoned by an officer who was adverse to the defendant, and who was

biased or prejudiced by reason of having collected some of the testimony or subpoenaed witnesses adverse to him. This objection, however, was not made until after the trial had been concluded.

The clerk's record shows that both the prosecution and the defendant announced that they were satisfied with the jury after it had been examined upon *voir dire;* whereupon the jury was sworn to try the cause, and having announced that he was satisfied with the jury and, also, that he was ready to proceed with the trial, it is too late now to raise any questions as to its competency.

Following these objections, appellant urges the following grounds for reversal: 1. That there is no direct evidence that the prosecutrix was not the wife of the defendant; 2. That the court erred in giving forms of verdict to the jury; and finally, defendant is entitled to a new trial by reason of an alleged separation of the jury after the cause was submitted for consideration.

█ The prosecutrix was not asked the direct question as to whether she was the wife of the defendant, nor do we find that this question was propounded to any other witnesses. However, we think the testimony in the case sufficient to enable the jury to draw a correct conclusion upon this question, although it would have been better had the prosecution asked the direct question, and thus saved the consideration of this technical objection. The law is well settled as to what an information must contain and the authorities cited by appellant all show that the information or indictment must charge the offenses as having been committed upon the person of a female, not the wife of the defendant. However, we have found no decision nor has our attention been called to any cases which hold that the omission to ask the direct question cannot be supplied by testimony which evidences the fact that such relationship did not and does not exist.

The testimony in this case is to the effect that the defendant was employed in doing odd jobs at the home of the prosecutrix; that the prosecutrix was requested to bring water and beer to the defendant while he was working, that on several different occasions he seized the prosecutrix and accomplished his purpose against her will and wish. It shows that at the time of the accomplishment on several

occasions, the defendant threatened to kill the girl if she told her parents what had occurred, also told the prosecucutrix if she told her mother or father he, the defendant, would be sent to jail. The language used by the witness is as follows: "Don't tell your mother and father. You know it will mean twelve years in jail for me if they find it out", and being told by the prosecutrix that she thought her mother and father ought to know about it, the defendant threatened to kill the prosecutrix if she told.

Again, when there was some conversation between the defendant and the prosecutrix relative to the condition of the prosecutrix, and that she was probably pregnant, the prosecutrix was again warned not to tell her mother and father. The testimony shows that the defendant had been twice married and twice divorced, and there is testimony in the record about his wives, referring to other than the prosecuting witness, but, it would appear from the record that none of the women referred to was the wife of the de-·fendant at the time of the trial; also, the testimony which we have stated, was allowed to go into the record as to obtaining the $50 and the plan to go to San Francisco to enter a house where they could make good money, was all before the jury, from which the conclusion might justly be drawn, and which we think could only be drawn, that the prosecutrix was not the wife of the defendant. We may again repeat the part of wisdom would indicate that these technical matters should be carefully looked after by the prosecuting officers.

In giving its instructions to the jury, the court also submitted to it various forms of verdicts. In doing so, it is claimed that the court committed prejudicial error and indicated to the jury the form of verdict that should be returned finding the defendant guilty. Three forms of verdict were submitted, the first finding the defendant guilty on —— counts; finding the defendant guilty on —— counts as charged in the information and recommending that the defendant be imprisoned in the county jail; 2. Finding the defendant guilty on —— counts and recommending that the defendant be imprisoned in the state prison; 3. Finding the defendant not guilty.

The court then instructed the jury as follows: "Of course in the event you find the defendant not, guilty you will

use this last form and merely sign it by your foreman. In the event you find the defendant guilty, then it will be necessary for you to determine whether the defendant is guilty upon all three or one or more of the counts in the information and insert the proper words in the blank space. For instance, it reads: 'We, the jury, find the defendant Ervin Truesdell guilty of the crime of rape on blank counts.' In the event you should find him guilty on each of the three counts you should insert there the words 'the three', on the three counts charged in the information. If you should find the defendant guilty of the first, the words 'first', 'first and second', or 'second and third'. I have made pencil memorandum on one of the forms of verdict for your use to guide you in filling that out. Of course, as you have been heretofore advised and instructed, you must in the event you find him guilty determine whether he shall be imprisoned in the county jail or state prison."

The jury, as heretofore stated, found the defendant guilty on all three counts and recommended that he be punished by incarceration in the state prison.

If the words "I have made pencil memorandum on one of the forms of verdict for your use to guide you in filling that out" stood alone, it would certainly impinge upon the rule that the court should not indicate to the jury what its verdict should be, but taken in connection with the whole paragraph, it appears that these words are predicated upon the fact of the jury having first found the defendant guilty on all three of the counts contained in the information.

In 24 California Jurisprudence, page 881, the text supported by the authorities reads as follows:

"The court may instruct the jury as to the form of their verdict, and may furnish blank forms, appropriate instructions being given as to the filling in of the blanks."

That, in fact, was all that was done in this case when the whole paragraph is read together, which we think, is the correct rule of interpretation.

It is finally argued that prejudicial error resulted from allowing the jury to separate after the cause had been submitted to it for determination. The facts as to the alleged separation of the jury are not in dispute. They are as follows:

After the jury had retired to deliberate upon its verdict and had been deliberating for somewhat over an hour, the court instructed the bailiff to take the jury out for lunch. In so doing, they were taken after what was called the rush hour to a restaurant near by for a noon meal. The jury was transported in two automobiles, six in the first, six in the second; the time of transport did not occupy more than five minutes. The jury was in the presence or within sight of the bailiff all of the time. The chauffeur, who drove one of the machines, testified that not a word was spoken by him to the jury nor a word by the jury to him, nor was the case mentioned during the five minutes' ride. The same facts appear in testimony relative to the first automobile in which the jurors were riding. As soon as the two automobiles arrived at the place selected for luncheon, they were marched in together, seated together and under the eyes of the bailiff during all of the meal. As soon as luncheon was concluded, the jury was brought back to the courtroom, the courtroom being used as a jury-room for the time being, where the deliberation of the jury was resumed.

The affidavits showing this separation and the affidavits to which we have referred justify the trial court in the conclusion that not a word was said to the jury by anyone during the limited separation, and that nothing occurred which could possibly prejudice the rights of the defendant.

Section 1121 of the Penal Code provides only for the separation of a jury prior to the submission of the cause. Section 1128 of the Penal Code provides what may be said to a jury and how they shall be kept together after the jury has retired for deliberation. Section 1181 of the Penal Code specifies the grounds upon which the court may grant a new trial and contains the following: "When the jury has separated without leave of the court, after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented."

The language of the section is that the court *may* grant a new trial, not that it must. In considering this subdivision of the section, it has been held that the burden is cast upon the People to prove that no prejudice has resulted. In the present case, the affidavits show without contradic-

tion that no one communicated with the jury. During the few minutes occupied in transporting it from the court-room to the restaurant and from the restaurant to the court-room, no discussion was had of the defendant's case.

In *People* v. *Knight,* 63 Cal. App. 68 [218 Pac. 79, 81], we find the following:

"Appellant claims that he is entitled to a new trial upon the ground that after the case was submitted to the jury the officer in charge of the jury was guilty of misconduct in that he allowed the jury to separate, and himself entered the jury-room and was with the jury on four different occasions during the time of its deliberations. The separation of the jury consisted in the fact that the officer allowed the jury to leave the jury-room and go down the hall to the toilet during which time a portion of them were talking in the hall-way, where a number of other persons were present. There is nothing in the affidavits tending to show that any of these occurrences of which complaint is made included any discussion of the case or any fact prejudicial to the defendant. While it may properly be said that the officer did not strictly conform to the proprieties pertaining to his duty in caring for the jury, we are satisfied that there is nothing in the facts shown which would furnish a sufficient cause for granting a new trial."

In *People* v. *Cross,* 64 Cal. App. 443 [221 Pac. 684], a number of cases having to do with the question we are now considering was under consideration. From these cases the conclusion is drawn that the burden rests upon the prosecution to rebut the presumption of prejudice, but if that presumption is rebutted, the trial court may properly deny the application for a new trial based upon such grounds.

In the Cross case, *supra,* the facts show that other people were allowed to converse with the jury, and it is shown conclusively in that case also that the jurors were out of sight of the officer, who had been sworn to take charge of them.

In several of the cases where a new trial has been granted it has been shown that the jurors were placed in different rooms over night, from which the conclusion was inescapable that the officer could not make affidavit that

they were always under his personal supervision, or that anybody did not meet and converse with them.

We readily concede that where the jury has been allowed to separate and other persons had and exercised the *oppor-tunity* of conversing with the jury, and the jurors have mingled with others than themselves before coming to a conclusion, then and in that case, a new trial should be granted, but the circumstances we are considering show no such prejudicial occurrences and rebut any presumption of prejudice.

We may further add that no impartial person can read the record without coming to the conclusion beyond a reasonable doubt that the defendant is guilty and guilty on all three counts contained in the information and that the verdict of the jury is the only one which could be returned consistent with their oaths.

The order and judgment are affirmed.

Parker, J., *pro tem.*, and Thompson (R. L.), J., concurred.