[Crim. No. 1523. Fourth Dist. Oct. 27, 1959.]

THE PEOPLE, Respondent, v. OTHA DAVIS, Appellant.

Frank R. Moore, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Marvin L. Part, Deputy Attorney General, for Respondent.

SHEPARD, J.—Defendant was charged by an information filed in the Superior Court in the County of Riverside with five counts of felony. They are Count I: kidnapping Homer Lee Robertson [with bodily harm inflicted]; Count II: assault with intent to commit murder on Homer Lee Robertson; Count III: abduction of Mary Robertson; Count IV: rape of Mary Robertson; Count V: rape of Mary Robertson. Defendant was also charged with two prior separate felony convictions (1944 and 1946) which he admitted to be true. Upon the suggestion of defense counsel defendant's then sanity was tried and defendant found sane. The defense of not guilty by reason of insanity was not interposed. On defendant's plea of not guilty a trial before a jury was started on November 24, 1958, but a mistrial was ordered because of a juror's misconduct. On December 1, 1958, trial before a jury was again started and on December 8, 1958, the jury returned verdicts of guilty on the charges contained in Counts II, IV and V, and not guilty on Counts I and III. A motion for a new trial was made but later withdrawn by the defendant. The matter was referred to the probation officer, the probation officer's report was had, probation was denied, and judgment of imprisonment in state prison was imposed with Counts IV and V to run concurrently but Count IV to

run consecutively after the sentence on Count II. Defendant appeals from the judgment.

The facts shown by the record are that on August 3, 1958, Mary Robertson and her husband, Homer Lee Robertson, camped on the Cabazon Indian Reservation near the city of Indio, California. Between 8:30 and 9:30 p.m., after Mary and her husband had gone to bed she suddenly saw defendant (a complete stranger) crouched over her. She screamed. Defendant warned her to be quiet or he would kill her, and he repeatedly struck her husband with a heavy object causing a depressed fracture of his skull near the left eye, breaking one of his fingers, and apparently causing a heavy laceration behind one ear. The next day defendant was found in possession of a knife and a screwdriver. The medical evidence, however, is not clear as to what instrument was used in the striking except that it was not a "sharp" instrument. However, the sight of the eye was permanently destroyed. He then forced Mary and Homer to go into a cotton patch about 200 feet away, where he bound and gagged Homer. He then took Mary some distance further into the cotton patch, away from Homer, and by threats which put her in fear of her life forced her to engage in sexual intercourse with him. He then took Mary back to where Homer lay and attempted to compel Mary to kill Homer by striking Homer on the head with a stone. She resisted, deflecting the blow so that it missed Homer's head. Defendant then moved Mary and Homer to another location. By this time Homer was covered with blood from the cuts and gashes on his head, and apparently was in a partial stupor. Again defendant left Homer lying on the ground apparently unconscious, ordered Mary to walk a short distance away and again had intercourse with her. Upon defendant's return with Mary to Homer the three walked under defendant's orders to other locations. After daylight Homer was able to get help when defendant took Mary a short distance away to a store to get some food, after warning Homer not to move because defendant had Mary. Officers were called and defendant was arrested. Witnesses at the trial consisted of the two victims, certain police officers, the doctor who treated the victims, and persons who observed some of the actions of defendant and Mary during the trip of defendant and Mary to the store after daylight. Defendant did not himself take the witness stand in his own defense.

Defendant first contends that the first time the jury was taken to the scene of the crime the defendant did not accom-

pany the jury. The record is entirely contrary to the defendant's contention. The record shows the jury made one trip, but only one trip, to the scene of the crime. This trip was made on the motion of defense counsel and defendant was present on this trip along with the judge, jury, attorneys and court attachés. It is possible that the defendant confuses some trip during the former aborted trial or at some other time not contained in this record and not a part of this trial. In any event, the record here is clearly contrary to defendant's contention and we have no reason to doubt its veracity.

■ Defendant's second contention is that error was committed by jurors separating and conversing during the time when the jury was viewing the scene of the offenses. The record shows that the judge, jury, defendant, counsel and court attachés all went together in the same bus to the scene of the crime at the request of defendant's counsel. At the scene of the crime the judge instructed the jurors that they might, if they wished, step down from the bus. Two jurors and two officers did so. The officers walked about 4 feet from the front steps of the bus and the two jurors walked about 12 feet beyond the officers, but all remained within plain sight and call of the judge and the balance of the jury. There is no evidence that the jurors discussed the case with each other or with anyone else, or even held a conversation, although one juror did point a finger (in what direction is not shown). We do not find any impropriety of any kind in the actions here shown by the record. Even the defendant does not contend that the acts complained of caused any injury to his defense. There was no error. (*People* v. *Cord,* 157 Cal. 562, 569 [3-4] [108 P. 511] ; *People* v. *Martin,* 87 Cal.App.2d 581, 590 [12] [197 P.2d 379] ; *People* v. *Drake,* 151 Cal.App.2d 28, 41 [9] [310 P.2d 997].)

■ Defendant then continues with points 3 to 10, which all relate to certain alleged inconsistencies or conflicts in the testimony of the various witnesses. These alleged inconsistencies are of the type commonly found in every case where different people relate their separate memories of factual occurrences, or attempt from memory to recount at different times the same occurrence. However, even though they were serious the evidence was ample to support the verdict, and when this is true an appellate court cannot weigh the effect of possible conflicts in the evidence.

■ "The decision of the jury, . . . will not be set aside on appeal unless there is no substantial evidence upon any

hypothesis whatsoever to support the verdict of the jury and the conclusion of the trial court." (*People* v. *Robinson*, 43 Cal.2d 132, 136 [3] [271 P.2d 865].)

Point 11 apparently relates to an alleged occurrence during the former trial which was declared a mistrial. The record of the present trial contains no suggestion of an alleged loaning of a sweater by a juror to a witness during the trial. Furthermore, the defendant does not even claim that such occurrence damaged his case.

We have carefully reviewed the entire record of the trial. We find that the trial judge was meticulously fair to the defendant throughout the trial. Defendant was represented by able counsel, alertly protecting the interest of the defendant at every stage of the proceedings. We have discovered no prejudicial error anywhere in the record. The evidence was ample to sustain the conviction.

The judgment is affirmed.

Griffin, P. J., concurred.

A petition for a rehearing was denied November 23, 1959.