Filed 6/9/16  Pekker v. Chupkin CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LEONID PEKKER,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>EUGENE CHUPKIN,<br><br>　　　　Defendant and Appellant. | A142937<br><br>(San Mateo County<br>Super. Ct. No. CIV 505508) |

## INTRODUCTION

Defendant Eugene Chupkin, proceeding in propria persona, appeals from a judgment in favor of plaintiff Leonid Pekker in the amount of $499,224 for injuries resulting from an assault and battery, for which Chupkin was previously convicted. Chupkin claims Pekker's cause of action was time-barred; the conclusion that Pekker needs to use a "CPAP-Machine" for the rest of his life is not supported by the evidence; Pekker's medical expert's opinions were speculative; and the trial court erred in not allowing rebuttal expert testimony. We conclude Chupkin's claims are meritless, and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Pekker was invited to Chupkin's house, not by Chupkin but by an acquaintance, Alex Gurov, for a party on January 31, 2010.[1] Pekker and Chupkin were acquaintances,

---

[1] The case was tried before the court, and the stated facts are from the testimony presented at trial.

1

and Pekker would randomly see Chupkin at parties and restaurants  There had never been trouble between them before.

Pekker knew Chupkin by a nickname, "Verblud", which means "camel" in Russian.  Pekker had heard other people call Chupkin by this nickname, including several of his friends and Pekker's brother.

Pekker was frequenting the couch, watching television and talking with Inna Pinhasova, when Chupkin touched Pekker's hair.  Pekker took offense because he had "slightly longer hair" dressed "with gel" that "got all messed up."  So he told Chupkin, " 'Camel, don't touch my hair.' "  Chupkin got angry and told Pekker never to call him that again.  Pekker, in turn, asked Chupkin, why "he was showing off."  Chupkin cuffed Pekker on the head and walked away.  Pekker settled back down on the couch, with his head on the arm of the couch and his legs across Pinhasova.

Suddenly, Chupkin came from behind Pekker and started punching him.  Pekker fell to the floor.  Chupkin sank down, as well, and continued to beat him until somebody intervened and yelled for Chupkin to stop.  Pekker thinks he was struck about half a dozen times.  Pekker felt dizzy, his face "was pounding," his left eye was swollen shut, and he was bleeding from his lip and nose.  Pinhasova and Anna Fishkina told Chupkin he should take Pekker to the emergency room, and all four went to the hospital.

By the time Pekker was examined, he was in a lot of pain, he was sensitive to light, he had a headache, and he felt like he would throw up.  He had a series of head X-rays and stitches, and the doctors told him he might have a concussion.  Pekker had been working as an intern at a company called Reputation Defender, and did not have medical insurance.

Afterwards, Pekker and the group returned to Chupkin's house.  Gurov offered to let Pekker to spend the night and told him he would drive him home in the morning, which Gurov did.

Pekker continued to have headaches and felt nauseous for the next week. As a result of the beating, he was delayed in starting as a paid independent contractor for Reputation Defender. The following week, Pekker did start his paid job. He also saw his doctor, who explained Pekker had sustained an orbital floor fracture and had suffered nerve damage, which was why he was experiencing numbness on the left side of his face. He was also having trouble breathing through his nose, and his doctor gave him samples of a steroid spray, so he would not have to pay for the medication. He also was having problems sleeping. He continued to feel awful for the remainder of the month. In the meantime, Pekker had called Chupkin and asked Chupkin how he planned to pay for Pekker's medical bill. Chupkin replied, " 'Fuck you. Talk to my lawyer.' " [2]

Several months later, Pekker's upper front teeth started hurting. His dentist concluded his root was damaged and referred him to a specialist. Another physician recommended Pekker have surgery on his nose to improve his breathing and on his left eye to restore its appearance. He has deferred this treatment given his employment situation and his new family. He has continued to use nasal steroids and also uses a CPAP machine at night.

Pekker filed suit against "Yevgeny" Chupkin on May 12, 2011, alleging causes of action for assault and battery and seeking both compensatory and punitive damages. A year and a half later, on September 14, 2012, Pekker filed a first amended complaint, adding "Eugene" Chupkin as an "aka" for the defendant.

In his answer to Pekker's complaint, Chupkin asserted, as an affirmative defense, that the case was barred by the statute of limitations because the initial complaint named "Yevgeny," rather than "Eugene," Chupkin, as the defendant. Chupkin made a motion for a directed verdict on this issue at the outset of trial, which the trial court denied after

---

[2] When Chupkin had driven Pekker to the hospital, he had offered to pay Pekker's medical expenses.

receiving an offer of proof that "Yevgeny" and "Eugene" are interchangeable in Russian. Pekker, in turn, made an oral motion for a directed verdict on the affirmative defense, which was granted.

In light of Chupkin's felony convictions for assault and battery (resulting in great bodily injury), liability was admitted and trial was limited to the issue of damages. Chupkin did not present any expert witnesses, and stated that he would only be cross-examining one of plaintiff's physicians, Dr. Lipson.

Dr. Lipson testified that when he initially examined Pekker after the attack, he suspected Pekker had sleep apnea. Lipson observed physical changes associated with an external nasal fracture; a nasal septal deformity; trauma to Pekker's left facial skeleton; swelling and discoloration of his left eyelids and left cheek; swelling in his left eye; and swelling of the lining membrane of his nose. He sent Pekker to have a sleep study performed and subsequently diagnosed him with sleep apnea. Lipson recommended two surgical procedures – one to "correct a recession of the eyeball," and a septorhinoplasty to "reestablish the septum" in order to eliminate the breathing obstruction and correct the sleep apnea. He also believed Pekker would benefit from using a CPAP device.

The court awarded Pekker a total of $499,224 in damages—$175,671.45 for past and future medical costs, $23,552.55 for past and future wage loss, $200,000 for past pain and suffering, and $100,000 for future pain and suffering.

## DISCUSSION

### *Pekker's Lawsuit Was Timely Filed*

Chupkin contends the case is time-barred by the two-year statute of limitations applicable to assault and battery claims. (Code Civ. Proc., § 335.1.)[3] Although the initial

---

[3] Pekker asserts Chupkin has waived all of his arguments on appeal based on "lack of legal analysis, supporting authority, and a 'fair statement' of the evidence." While Chupkin's seven-page opening brief is sparse, it does contain some citations to the record and to legal authority.

4

complaint was filed within the two-year limitations period, it named as defendant "Yevgeny," rather than "Eugene," Chupkin. After the limitations period ran, Pekker filed a first amended complaint adding "Eugene Chupkin."

"California courts have shown a liberal attitude toward allowing amendment of pleadings to avoid the harsh results imposed by statutes of limitations. [Citation.] Thus, proper amendments to an original complaint 'relate back' to the date of the filing of the original complaint, despite the amendments being made after the statute of limitations has expired. [Citation.] The policy behind statutes of limitations is to put defendants on notice of the need to defend against a claim in time to prepare a fair defense on the merits. This policy is satisfied when recovery under an amended complaint is sought on the same basic set of facts as the original pleading." (*Garrison v. Board of Directors* (1995) 36 Cal.App.4th 1670, 1677–1678.)

"[W]here an amendment does not add a 'new' defendant, but simply corrects a misnomer by which an 'old' defendant was sued, case law recognizes an exception to the general rule of no relation back." (*Hawkins v. Pacific Coast Bldg. Products, Inc.* (2004) 124 Cal.App.4th 1497, 1503.) " '[W]hen a complaint is amended only to identify a party by its proper name, the gravamen of the complaint remains unaltered, and hence the later pleading relates back to the earlier pleading.' " (*Burgos v. Tamulonis* (1994) 28 Cal.App.4th 757, 763.)

Here, Pekker's amended complaint simply "correct[ed] a misnomer by which [the] 'old' defendant was sued." (*Hawkins v. Pacific Coast Bldg. Products, Inc.*, *supra*, 124 Cal.App.4th at p. 1503.) Accordingly, the amended complaint relates back in time to the original complaint, which is undisputedly timely.

Chupkin claims the trial court improperly took judicial notice that the name "Eugene" is the same as "Yevgeny." It did not. The court inquired as to an offer of proof regarding whether the two names were interchangeable in Russian, and Pekker's counsel indicated Pekker had an "expert from Stanford on Russian language and Russian

5

names" who would testify "Eugene is the Russian version of Yevgeny or vice versa." Chupkin's counsel did not disagree. Rather, he made an offer of proof that Chupkin had never held himself out as Yevgeny and had always been known as Eugene.

In any case, this entire interchange was beside the point. As discussed above, as a *legal* matter, Pekker's amended complaint related back to his original complaint, thus making his lawsuit against Chupkin, whether named as Yevgeny or Eugene, timely.

### The Trial Court's Damages Award Is Supported By Substantial Evidence

Chupkin claims the trial court erroneously concluded Pekker will need to use a "CPAP" machine for the rest of his life. He maintains this conclusion is not supported by the evidence and the damages based on it, in turn, are speculative.

The court stated "the picture I got here is that is the last thing in the world [Pekker] wants to do is have to wear one of these CPAP machines. So I think it's an either/or situation. Either Mr. Pekker is going to wear this air-puffing device for the rest of his life or he's going to get his air passages cleaned up by surgery and hopefully avoid that. [¶] So in my tentative decision what I have found that the evidence shows . . . that he would wish to get the reconstructive surgery and not have a CPAP machine for the rest of his life." The court therefore specifically deducted "medical commodities" (i.e., the cost of a CPAP) from Pekker's requested damages, and awarded damages based on the cost of reconstructive surgery instead of the cost of a CPAP machine.

We construe Chupkin's challenge to the damages award as attacking the predicate of the trial court's "either/or" conclusion, namely, that if Pekker did not have the surgery he would have to use a CPAP machine for the rest of his life. This, however, is supported by Dr. Lipson's testimony. Lipson testified "[i]f [Pekker]'s going to use [the CPAP machine], like many patients that I have do regularly all the time, then it maybe well be something that he uses for the next 50 years, looking at his life expectancy at this point." He further stated "there is no natural life progression that would render the need

6

of a CPAP device unnecessary for Mr. Pekker[.]"  Accordingly, Dr. Lipson's testimony amply supports the trial court's predicate determination that absent surgery, Pekker would have to use the CPAP machine for the rest of his life.

***Dr. Lipson's Expert Opinion Testimony Is Not Speculative***

Chupkin claims Dr. Lipson's opinion that Pekker suffered from sleep apnea was speculative and "pure guess works."

"The substantial evidence rule applies equally to expert and lay testimony.  Thus, expert testimony does not constitute substantial evidence when based on conclusions or assumptions not supported by evidence in the record [citation], or upon matters not reasonably relied upon by other experts [citation].  Further, an expert's opinion testimony does not achieve the dignity of substantial evidence where the expert bases his or her conclusion on speculative, remote or conjectural factors."  (*People ex rel. Brown v. Tri-Union Seafoods, LLC* (2009) 171 Cal.App.4th 1549, 1567.)  An expert witness may base his or her opinion on his or her special knowledge, skill, experience, training, and education.  (Evid. Code, §§ 801, 802.)  "A medical expert is entitled to express his opinion on a medical question presented in issue and then he may support that opinion by giving the reasons assigned in support of it."  (*People v. Martin* (1948) 87 Cal.App.2d 581, 584.)

Dr. Lipson stated he had "been working with patients in diagnosing individuals with obstructive sleep apnea" for "40-plus years."  He ordered a sleep study for Pekker, which showed Pekker had a "significantly elevated" respiratory disturbance index (RDI) of 11.6, and that "his oxygen saturation dropped from 98 percent to 91 percent."  Based on his physical examination of Pekker, Pekker's patient history, and the results of the sleep study, Lipson concluded Pekker had obstructive sleep apnea.

Chupkin takes issue with Dr. Lipson's opinion on the ground Medicare Guidelines provide that sleep apnea occurs at an RDI of 15 or greater, while Pekker had an RDI of only 11.6.  This was a matter for cross-examination.  And, indeed, Dr. Lipson

7

acknowledged Medicare "ha[d] imposed certain restrictions" as to a diagnosis of sleep apnea, but then pointed out the American Academy of Sleep Medicine guidelines indicated an " 'RDI of greater than 5 is used for a diagnosis of Obstructive Sleep Apnea.' "

In short, Dr. Lipson's opinion was not based on speculation, but on four decades of specializing in the area of sleep apnea, his examination of Pekker, the results of medical tests, and the guidelines of the American Academy of Sleep Medicine.

## *The Trial Court Properly Denied Rebuttal Expert Testimony*

Chupkin lastly contends the trial court erred in denying him the opportunity to present a rebuttal expert.

At the beginning of the trial, Chupkin's counsel told the court "we have not identified any experts that we will present on behalf of the defendant. We will be . . . cross-examining one of the plaintiff's treating physicians and experts, Dr. Lipson." However, at the conclusion of Lipson's testimony, Chupkin's counsel, invoking California Code of Civil Procedure section 473, subdivision (a)(1) asked to present expert rebuttal testimony on the grounds Lipson's testimony had differed from his deposition testimony.

Code of Civil Procedure section 473, subdivision (a)(1) provides, in relevant part, that the court may, "in its discretion, after notice to the adverse party, allow, upon any terms as may be just, an amendment to any pleading or proceeding in other particulars." (Code Civ. Proc., § 473, subd. (a)(1).) "When the trial court has ruled on such a motion, ' "unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." ' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.)

On questioning by the trial court, all Chupkin's counsel could say was that Dr. Lipson had, "with respect to the sleep study," identified "factors or ailments" he had not identified at his deposition. The thrust of counsel's complaint was disagreement with

8

Lipson's conclusion, claiming "the results of the sleep study are not conclusive of sleep apnea." Again, this was a matter for cross-examination, which was minimal. And, in any case, counsel argued this view of the evidence at closing. On this record, there was no abuse of discretion in denying Chupkin's belated request to present rebuttal expert testimony.

## DISPOSITION

The judgment is affirmed. Pekker is awarded costs on appeal.

_____
Banke, J.

We concur:


_____
Margulies, Acting P. J.


_____
Dondero, J.

A142937, *Pekker v. Chupkin*