# THE PEOPLE OF THE STATE OF CALIFORNIA, Respondents, *v.* W. RODMAN BACKUS, Appellant.

If one or more jurors in a criminal trial, separate without leave of the Court, so that such juror might have been improperly influenced by others, the verdict will be set aside.

A juror has no right to separate from others, without the permission of the Court, even though the defendant's counsel consented to it.

Nor will the affidavit of the juror, purging his conduct from the imputation of corruption or impropriety, be admitted.

The defendant in a criminal case has a right to question the jurors whether they have formed or expressed an opinion relative to the guilt or innocence of the accused without first challenging them for cause, and it is error to compel him to do so.

APPEAL from the District Court of the Fourth Judicial District, San Francisco County.

The facts material to the points decided appear in the opinion of the Court.

*H. S. Love*, for Appellant, to the point of misconduct of the juror cited Commonwealth *v.* Roby, 12 Pick., 519. Organ *v.* The State, 26 Miss., 78.

The Court erred in refusing to permit the counsel for the prisoner to examine the jurors touching their competency without first challenging for cause. 1 Scam., 479.

*J. R. McConnell*, Attorney General, for the People, cited The King *v.* Wolfe, 1 Ch., 401. State *v.* Babcock, 1 Cond. R. U. S., 401. State *v.* Prescott, 7 N. H., 287. Stone *v.* The State, 4 Humph., 27. Wilson *v.* Abrahams, 1 Hill, 207. State *v.* Miller, 1 Dev. & Bat., 500.

MURRAY, C. J., delivered the opinion of the Court. HEYDENFELDT, J., concurred.

During the trial of this case in the Court below, after the Court had adjourned, and directed the jury to be kept together under the control

of an officer, one of the jurymen absented himself from the jury room without the custody of the Sheriff for the period of two hours.

The statute of this State provides that the jury may separate by leave of the Court. In the present case the juror left his fellows without such permission. How far this would vitiate the verdict is a disputed point among the Courts of the various States of the Union; it is universally conceded that it is an irregularity. In New Hampshire, Connecticut, North Carolina and Indiana, it has been held that the mere separation of the jury is not sufficient of itself to authorize the Court to set aside the verdict, but that the party must show facts and circumstances tending to establish improper influences, while in Virginia and Tennessee it has been held that if the separation was such that the juror might have been improperly influenced by others, the verdict would have been set aside.

The latter rule we think is the correct one, because it would be impossible in almost every case for the prisoner to establish the fact of any corrupt or improper communications between the juror and others. This doctrine is substantially sustained by the Supreme Court of Massachusetts in the case of the Commonwealth *v.* Roly, 12 Pick, 519, and in a late case (decided in 26 Miss., 78—Organ *v.* The State,) in which the whole doctrine is reviewed. In the latter case the Court says :—

" If any separation is to be allowed without incurring the imputation of irregularity—for what length of time, and for what purpose may it be;. how frequently may it be practiced, and to what distance may it extend—by what means are communications between the juror and and other persons which may take place, and which must necessarily be secret, to be disclosed ?"

In the present case the consequences of the jury's separation is sought to be avoided by the affidavit of the juror himself, that he left the room by consent of the prisoner's counsel, and that no improper communication had taken place between himself and any one else during his absence. The first fact is denied by the appellant's counsel; and, even if it was true, we are at a loss to conceive how his consent could excuse the consequences of an act which could only be permitted by the Court. Neither can the affidavit of the juror be admitted to purge his conduct from the imputation of corruption or impropriety—for, say

the Court in the case just cited, if a party had been guilty of any corruption he would not hesitate to conceal the same by direct perjury.

There is another objection raised by the appellant which if not sufficiently erroneous to reverse the judgment, at least calls for correction at the hands of this Court. I refer to the course adopted by the Court below in refusing to allow the prisoner to propound any interrogatories to the jurors without first challenging them for cause. It is usual everywhere to ask the juror if he has formed or expressed an opinion as to the guilt or innocence of the accused, but in the present case the Court refused to allow these questions to be asked, and the prisoner was compelled to prejudice his case by first challenging the jurors, and then having the fact of their bias determined by triers appointed by the Court. Before being thus compelled to challenge he should have been allowed to ascertain whether there was any fact from which the presumption of bias or prejudice would arise, and this fact having been ascertained then the challenge would properly have followed, and the triers would have had to ascertain whether there was bias in fact.

Those who are acquainted with the transaction of business in Courts of Justice, and who have watched the workings of the human heart, as it has discovered itself upon the witness stand, and in the jury box—who have witnessed the mortification, chagrin, the anger, the injured pride and wounded vanity of those who are daily brow-beaten and cross-questioned or challenged as incompetent to sit upon juries, well know that there is no more effectual way of damning a cause than to compel a party thus *in limine* to assail all the vulnerable points of human weakness. I have known many instances in which persons have conceived and retained the most bitter animosities towards counsel for challenging them as jurors, and that too, in cases where there could be no possible interest on either side. Knowing this, it would amount almost to denial of justice to compel a party on trial for his life to resort to such a mode to ascertain the competency of his jurors. With the facts of this case we have nothing to do.

This Court will not make itself the mere instrument of an insatiated thirst for blood, nor pander to any public clamor for vengeance. The law should throw its protecting mantle around the hardened criminal as well as the innocent, and guarantee to each the right of a fair trial.

We are of the opinion that the judgment of the Court below should be set aside for the reasons assigned, and that the prisoner should be retried for manslaughter.

In the case of the People v. Gilmore, 4 Cal., 376, this Court held that a conviction of manslaughter acquitted for murder, and that the prisoner could not be again tried for the crime of murder.

Notwithstanding the specific directions given to retry the prisoner for manslaughter we were informed on the argument in this case that a *nolle prosequi* in that case was entered, and the prisoner discharged.

We have never arrogated to ourselves any more learning than that possessed in inferior Courts and prosecuting officers, but it would be scarcely unfair to suppose that the united judgment of three men was sometimes equal to that of one, and if we mistake not the theory of our system of jurisprudence, the Supreme Court was designed as a tribunal of last resort to settle precedents, and its decisions are authoritative upon the Courts of this State, notwithstanding they may not meet with the approbation of others of more wisdom, learning and integrity than ourselves.    The case of Gilmore was one of brutal murder, a case in which the Court below granted a new trial, assigning as the reason, that he ought to have been convicted of murder, and yet in despite of the order of this Court, he was discharged and public justice thereby defeated. We have alluded to these facts for the purpose of exculpating ourselves from the charge of his voluntary acquittal, and expressing our determination hereafter of firmly carrying out the orders of this Court.

Judgment reversed and new trial ordered.