People *v.* Brannigan.

---

## PEOPLE *v.* BRANNIGAN.

WHERE the jury in a criminal action, after having retired to deliberate upon their verdict, separate without permission of the Court, the irregularity is sufficient ground for setting aside a verdict of guilty rendered by them, unless it be shown affirmatively by the prosecution that the defendant was not prejudiced thereby.

A verdict of guilty in a criminal action will not be set aside on a showing that a

third person expressed in the presence of the jury, while they were deliberating upon their verdict, a wish that the defendant should be convicted, where the expression appears to have been a mere passing remark and not part of a conversation in which the jury engaged.

APPEAL from the Court of Sessions of Sacramento County.

. The defendant was indicted for the crime of rape, and was convicted.

A motion for new trial was made by him, in support of which he filed an affidavit setting forth, among other things, that the jury after they had retired under charge of an officer to deliberate upon their verdict separated without leave of the Court, or consent of the parties; also setting forth that they were taken by the officer across the street to a hotel for the purpose of taking dinner; that while there the proprietor of the hotel had a conversation with one or more of them in which he used the following language: " Stick to it until you rot and the pismires carry you out, but what you convict him." No counter-affidavits were filed.

The motion for new trial was denied, and defendant sentenced to ten years' imprisonment. From the order refusing a new trial defendant appeals.

*R. H. Lloyd*, for Appellant.

*J. W. Coffroth*, for the People.

FIELD, C. J. delivered the opinion of the Court—COPE, J. and NORTON, J. concurring.

The statute regulating proceedings in criminal cases provides that when the jury do not agree, after a case has been submitted to them, without retiring for deliberation, one or more officers shall be sworn " to keep them together in some private and convenient place, and not to permit any person to speak to them, nor to speak to them themselves, unless it be to ask them whether they have agreed upon a verdict, and to return them into Court when they have so agreed." (Sec. 402.)    And it empowers the Court to grant a new trial " when the jury have separated without leave of the Court after retiring to deliberate upon their verdict, or been guilty of any mis-

conduct tending to prevent a fair and due consideration of the case." (Same Act, sec. 440.) The object of the first provision is to remove the jury from all improper influences in their deliberations; and the object of the second provision is to furnish a remedy where the jury have been subjected to such influences, or been themselves guilty of misconduct tending to affect the purity of their verdict.

The language of the oath administered to the officer having the jury in charge points out with clearness his duties. He is required " to keep them *together ;*" that is, he must not permit them to separate. He must keep them " in some *private* and convenient place ;" that is, removed from access by strangers. He must not " permit any person to speak to them," a duty which can only be performed by following the previous requirement of keeping them in a private place. And, finally, he must not speak to them himself, except to ask them whether they have agreed upon a verdict. When either of these requirements is disregarded by the officer, he fails to perform his duty, and the trial is irregularly conducted. If a conviction follows, the prisoner has ground to complain of the irregularity. He is entitled to all the protection which the statute intends to secure, against any interference with the action of the jury, whether arising from the hostility of personal enemies or popular prejudice. If such protection be not afforded, suspicions are excited and confidence in the justice of their decision is destroyed. It would seem therefore but reasonable, where an irregularity has been committed, which *may* have affected the jury, that the Government, seeking to uphold their action, should be called upon to show that no injury to the prisoner has followed from the irregularity complained of. If this can be shown, their verdict will not be disturbed—for the end which the law contemplated by its provisions has been attained. In the present case the irregularity consisted in the unauthorized separation of the jury, after retiring to deliberate upon their verdict. The prisoner, in his affidavit, upon which the motion for a new trial was based, alleges the separation, and the fact is not controverted, nor is any explanation of it attempted by the State. The District Attorney appears to have considered it incumbent upon the prisoner to show affirmatively injury to him-

self resulting from the separation, or at least reason to suspect such injury. There are authorities which support this view. Such are the cases cited from the New York Courts. But there are authorities of equal weight the other way, and the latter, we think, are supported by better reasons. In *Commonwealth* v. *McCaul* (Va. Cases, 305) the General Court of Virginia held that the separation of itself vitiated the verdict, although· it affirmatively appeared in that case that no improper influences had been brought to bear upon the jury. "From the mode," said the Court, "in which collusion and tampering is generally carried on, such circumstance is generally known to no person except the one tampering and the person tampered with, or the persons between whom a conversation may be held which might influence the verdict. If you question either of these persons on the subject, he must criminate or declare himself innocent, and you lay before him an inducement not to give correct testimony." And after observing that the ancient rule, that the jury should on no occasion separate, had been relaxed only in cases of imperious or unavoidable necessity, the Court continued: "But by allowing that a jury may separate without necessity, and that their verdict shall stand, unless the party accused, who in these cases is in the custody of the law, can show that the jury not only have separated, but that they or a member of it has also been tampered with, or held communication on the subject, this great barrier against oppression may gradually be sapped and undermined, and the bulwark cannot long remain. Such a precedent would be productive of evils incalculable, and too great for the Court by its decision to allow a door to be opened for them."

This case, so far as it holds that separation alone vitiates the verdict in a criminal case, even when shown to have produced no injurious consequences, has been generally condemned, but in other respects has been followed in several of the States. In *McLain* v. *The State* (10 Yerger, 242) the Court said: "The affidavits, which are uncontradicted, show conclusively that several of the jury repeatedly separated from the others, without the care of the officer appointed by the Court to attend them, and were absent for the space of fifteen or twenty minutes—long enough to have been tampered with, if there had been any disposition to do so. It is

not necessary for the prisoner to prove that they were, during their absence, subjected to improper influences from others; it is sufficient if they might have been.  There would be no safety in a different rule of practice, for it would be almost impossible ever to bring direct proof of the fact that it was done."    (See also *Riley* v. *The State*, 9 Humph. 654; *McCann* v. *The State*, 9 Smedes & Marsh. 465.)

In the case of *The State* v. *Prescott*, (7 N. H. 287) the Supreme Court of New Hampshire, after an extended consideration of the authorities, held that the burden of proof lay upon the Government to show that the prisoner had not suffered any injury by reason of the separation of the jury, and that in the absence of such proof he was entitled to the benefit of the presumption that the irregularity had been prejudicial to him.  " The prisoner," said the Court, " is in such case entitled, as a matter of right, to require, in the first instance, a compliance with the ordinary forms provided by the law to secure to him a fair and impartial trial; and if the guards provided for his security are neglected, or disregarded, he is at least entitled to require, at the hands of the Government, satisfactory evidence that he has not received detriment by reason of such neglect, and is not to be put to show, affirmatively, that such departure from the customary mode of trial has been the probable cause of his conviction.  The shield which the law has provided would fall far short of affording him the protection intended, if it might be thrown aside at pleasure, and he have no right to complain unless he could prove that the want of it had been actually prejudicial to his case; a matter which it might in many cases be very difficult to prove, notwithstanding such was the fact.  He has the right, therefore, to call upon the officers of the Government in such case, before they demand judgment, to show that the irregularity in the trial has not been the means of injustice in the verdict."

In the several cases from which we have thus cited the separation occurred before the jury had retired to deliberate upon their verdict, but the reasons advanced apply with equal force to separations afterwards.

In addition to their unauthorized separation, the defendant also

alleged misconduct of the jury as ground for a new trial.    It appears from the record that while the jury had the case under consideration, and before they had agreed upon a verdict, they were taken by the officer who had them in charge to a hotel opposite the room in which they were deliberating to get their dinner, and while there the proprietor of the hotel spoke to some of the jurors and told them to convict the defendant.    The affidavit upon which the new trial was asked states that the proprietor had a conversation with one or more of the jurymen, but we regard the language used as a mere passing remark of the proprietor.    If, indeed, there was a conversation—that is, if language was used by both parties, or if used by one was listened to by the other—then there was such misconduct as to authorize, for that reason, the annulling of the verdict.    But as a passing remark of the proprietor it did not, however improper, constitute misconduct of the jury. For making it the proprietor not only merited the reprimand of the Court, but should have been severely punished as for a contempt. The fact that the jury were exposed to remarks of this character sufficiently shows the impropriety of taking them to the hotel, where they were liable to come in contact with strangers, and the wisdom of the provision requiring the officer to keep them together in some *private* place.

Judgment reversed, and case remanded for a new trial.