[Crim. No. 4755.   Second Dist., Div. Three.   June 19, 1952.]

THE PEOPLE, Respondent, v. ROLAND R. RUSHTON, Appellant.

John H. Marshall, Peter R. Hornbrook and Ames Peterson for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was accused in two counts of violating section 496bb of the Penal Code in that he unlawfully bought and received certain property knowing that it had been stolen. The jury found defendant guilty as charged. His application for probation was denied. Judgment was that he be imprisoned in the state prison. The notice of appeal recites that defendant appeals from the order denying his motion for a new trial and from the judgment and sentence. ■ Since an appeal from a sentence is not authorized, the purported appeal therefrom will be dismissed. (*People* v. *D'Elia,* 73 Cal.App.2d 764, 766 [167 P.2d 253].)

Appellant contends, among other things, that misconduct on the part of a juror was prejudicial.

About midnight on January 27, 1951, a Motorola television set and 27 Series E War Bonds, the total maturity value of which was $725, were stolen from the home of Lamar Criss in Sun Valley. The television set had been purchased about one month prior to the time it was stolen, and the purchase price was $320. Mrs. Criss had a card upon which appeared the serial number, model and make of the set. Names of members of the Criss family appeared on the bonds as owner and co-owner. Jack Doss pleaded guilty to the burglary. According to his testimony he helped others remove articles from the Criss home, including the television set; he did not see the bonds taken but the next day there were some bonds in the front of the automobile; on the morning of June 28th he went to the Dugout Bar, 634 South Main Street, where appellant (a former police officer) worked as a bartender; he told appellant that he (Doss) had a friend who had a television set that he would sell.

Appellant testified that when Doss came to the Dugout he was accompanied by three men and a girl; Doss pointed to one of the men, known as "Jerry," and said that Jerry and his girl were breaking up and that they had a television they wanted to sell; he (appellant) thought they said they wanted

$75 for it; appellant told Doss and Jerry that Casey, who was manager of a café owned by appellant on Hooper Street, might like to have the television; appellant called Casey on the telephone, and Casey said he thought television would stimulate business; appellant told Casey he would send "the party" down, and if the set was all right that Casey should buy it; after Doss and his companions left the Dugout, appellant saw an envelope on the bar; a man who was seated near the place where the envelope was said he thought that the girl left it; appellant glanced at the envelope and saw that there were bonds in it; he threw them on the back bar, and the next day he put them in the office.

Casey testified that Doss came to the café on Hooper Street with another man and a woman in an automobile; Casey then followed them in his automobile to a place in Huntington Park where they picked up the television, put it in Casey's automobile and returned to the café; Casey paid Doss $75; the television was placed in the front window of the café with its back toward the street.

On February 2, 1951, a police officer went to the café on Hooper Street and saw the television. He went outside and checked the serial number, which was visible through the window, and found that it was the serial number of the television which had been stolen from the Criss home. According to the testimony of the police officer, he then went into the café and had a telephone conversation with appellant; appellant and Casey came to the café, and the officer told appellant that the television had been stolen; appellant said that he knew Doss and Jerry, and that they were drunks and bums; he (officer) asked appellant if he had bought or received anything else from Doss and Jerry and appellant said "no"; on the following day, February 3d, the officer went to the Dugout and told appellant he had come for the envelope that the burglars had left there, and appellant said, "You mean those war bonds?" The officer and appellant left the bar by way of the rear door and walked about 40 feet to a liquor storeroom in another building. Appellant unlocked the door, entered the room and picked up the envelope, which contained the stolen bonds, from a desk and handed it to the officer.

The jury retired to deliberate at 11:35 a. m. The courtroom and judge's chambers are on the eighth floor and the jury room is on the ninth floor of the hall of justice. Between the courtroom and the chambers there is a hallway. The only way to enter the jury room is by a stairway which extends

from the hallway to the jury room. The foreman left the jury room, descended the stairway to the hallway, and had a conversation with the trial judge who was then proceeding from the courtroom to the chambers. About 2 p. m., in the judge's chambers (in the absence of the jury), the judge told the defendant, counsel for defendant, and the deputy district attorney that after the jury had been sent to the jury room, he proceeded in the trial of another matter; he left the bench about 12:10 p. m., and while going from the courtroom to his chambers he saw one of the jurors standing on the bottom step of the stairway; the juror said, "We want to ask you a question about the verdict in this case"; the judge replied, "You have no right to leave the jury room, get back up there and stay there, and if you wish to ask the Court about any instructions or any point of law or any other matter concerning the case, you should buzz for the Bailiff and I will bring you into court and answer any questions you might have"; the juror then stated, "We just wanted to know how many verdicts we were to render in this case"; the judge replied, "You have been furnished with proper forms. Now get back up in the jury room." Counsel for defendant then requested that the court declare a mistrial, which request was denied.

About 3:15 p. m. the jury returned to the courtroom and the verdicts of guilty on both counts were read. The judge then stated that he recognized the foreman of the jury as the juror who left the jury room. The foreman, thereupon being sworn, testified that about 10 minutes after the jury retired he left the jury room; he went to the judge's chambers "and told him we were in doubt about the case and whether we should find the defendant guilty or not guilty on one or two counts"; that "He [judge] said we had to find him guilty or not guilty on two counts"; he (foreman) then left the judge's chambers and went up to the jury room and repeated to the other members of the jury the conversation he had with the judge; he was gone from the jury room not more than a minute or two, and he saw no one and spoke to no one except the judge during his absence. Another juror, who was sworn, testified that no vote was taken by the jury during the time the foreman was out of the room.

■ Whether the separation of jurors without permission of court, after they have retired for deliberation, constitutes prejudicial misconduct depends upon the circumstances in each particular case. (See *People* v. *Weatherford*, 27 Cal.2d 401, 418 [164 P.2d 753].)

Section 1128 of the Penal Code provides in part as follows: "After hearing the charge the jury may either decide in court or may retire for deliberation. If they do not agree without retiring, an officer must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor to do so himself, unless by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed."

Section 1138 of the Penal Code provides in part: "After the jury have retired for deliberation, . . . if they desire to be informed on any point of law arising in the cause, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the district attorney, and the defendant or his counsel, or after they have been called."

Section 1181 of the Penal Code provides in part: "When a verdict has been rendered against the defendant, the court may, upon his application, grant a new trial . . . 3. When the jury has separated without leave of the court after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented."

■ In a criminal case when there is a separation of jurors without permission of court, after they have retired for deliberation, there is a presumption of prejudice to the defendant. (*People* v. *Cross*, 64 Cal.App. 443, 449 [221 P. 684].) The burden is upon the prosecution to rebut that presumption. (*People* v. *Martin*, 87 Cal.App.2d 581, 590-591 [197 P.2d 379].)

■ In the present case, after the jury had retired for deliberation, the foreman of the jury left the jury room, without permission of the court, and went down the stairway to the hallway between the courtroom and chambers. He remained away from the jury room and the other jurors a minute or two, according to one of his statements before the court. He also said that he left the jury room about 10 minutes after the jury had retired. Since the jury retired at 11:35 a. m., it appears that he left the jury room about 11:45 a. m. The judge saw him in the hallway about 12:10 p.m. It thus appears from his statement as to when he left the jury room, and from the judge's statement as to when the judge saw him, that he was away from the jury room and the other

jurors about 25 minutes. It is clear that the bailiff was negligent and that he failed to perform the duties required of him under his oath and by said section 1128 of the Penal Code with respect to keeping the jurors together. There is no explanation or any statement in the record regarding the whereabouts of the bailiff at the time the foreman left the jury room or during the one or two or twenty-five minutes the foreman was away from the other jurors. The judge's statement regarding the incident pertained, of course, only to what occurred during his brief conversation with the foreman. If the foreman was away from the other jurors about twenty-five minutes, as indicated by the above computation, there was considerable time, prior to the arrival of the judge in the hallway, as to which there was no explanation or statement by anyone regarding the conduct of the foreman. As indicated in *People* v. *Adams,* 143 Cal. 208, at pages 210-211 [76 P. 954, 101 Am.St.Rep. 92, 66 L.R.A. 247], it would be impossible in almost every criminal case for a defendant to be in a position to establish the fact of prejudice as a result of the improper separation of jurors. It is obvious that a defendant in a criminal case must rely almost exclusively upon the bailff, in the faithful performance of his duties, to safeguard the defendant's rights in the matter of keeping the jurors together during their deliberation. In view of the gross neglect of the bailiff herein and his failure to offer any explanation by way of accounting for the conduct of the foreman while he was separated from the other jurors, and in view of the bailiff's failure to offer any statement at all regarding the incident, it must be held, in the interests of according to defendant a fair and due consideration of his case by a jury, that the evidence was not sufficient to overcome the presumption of prejudicial misconduct as a result of the separation of the jurors. The judge's version of the incident and the foreman's version of it were at wide variance. Irrespective of what was said by the judge and the foreman in the hallway, it appears that the foreman told the other jurors, upon his return to the jury room, that the judge said that they "had to find him [defendant] guilty or not guilty on two counts." Even if the judge did not so advise the foreman, it is reasonable to believe that the absence of the foreman from the jury room would tend to add verity to his assertion that the judge had made that statement. Such purported advice was, of course, erroneous. The jurors could have understood therefrom that they could not find the defendant guilty on one count and

not guilty on the other count. The incriminatory evidence herein was circumstantial. The evidence under the count regarding the bonds was not as strong as the evidence under the count regarding the television. Under the evidence the jury might have found the defendant not guilty on one count and guilty on the other count. The separation of the foreman from the other jurors, resulting in such a relayed instruction to the other jurors, constituted prejudicial misconduct. The defendant was entitled not only to a trial that was fair as a matter of fact, but he was entitled to a trial that appeared to be fair. Under the circumstances herein, it would seem that due regard for the rights of the defendant would have required the trial judge to promptly grant defendant's motion for a new trial.

By reason of the above conclusions, it is not necessary to discuss other contentions of appellant.

The judgment and the order denying the motion for a new trial are reversed. The purported appeal from the sentence is dismissed.

Shinn, P. J., and Vallée, J., concurred.