THE PEOPLE, Respondent, v. HARRY C. WERWEE, Appellant.

Smith & Wymore and Milo S. Smith for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

SHINN, P. J.—Defendant Werwee was convicted in a jury trial of forcible rape and attempted violation of section 288a, Penal Code. His motion for a new trial was denied. Proceedings for imposition of sentence were suspended and defendant was placed on probation. He appeals from the order denying his motion for a new trial.

The sole ground of appeal is that after the cause was submitted and while it was under consideration by the jury the court, after admonishing the jurors, and with the expressed consent of counsel in open court, ordered their release to go home for the night and to return to court the following morning for further deliberation. The jurors went to their homes, convened on the following day and returned verdicts of guilty.

The point was raised on motion for new trial, whereupon 11 of the jurors were sworn and testified that during the separation, while they contacted and conversed with many people, they did not converse with anyone and were not communicated with concerning the case. It was stipulated that the 12th juror, if called, would testify to the same effect.

Defendant's contention is that the power of the court to permit separation of the jurors is limited by sections 1121 and 1128 of the Penal Code; that under section 1121 separation may be permitted only ". . . before the submission of the cause to the Jury"; that by express mandate of section 1128 of the Penal Code, the jurors, after submission of the cause, must be kept together in charge of an officer, who must not permit any person to speak to or communicate with them, with the exception that when the jury is composed of both men and women and it becomes necessary to retire for the night, the women must be kept separate and apart from the men, and that the separation of the jurors overnight was such an irregularity as to have required the grant-

ing of a new trial. He relies upon *People* v. *Hawley,* 111 Cal. 78 [43 P. 404], a case which fully supports his position. There the jurors, with the consent of the defendant, were allowed to separate late in the evening and reassemble the following morning. The court, citing authorities, stated (p. 85): ''Our statute permits such separation in all cases before the submission of the case, in the discretion of the court, but expressly provides that after retiring to deliberate upon their verdict, they must be kept together. (Pen. Code, § 1128.) The court, therefore, had no authority, either under the statute or at common law, to permit the separation, nor could the consent of the defendant or his counsel operate to empower or excuse the violation of an express provision of the statute.'' We deem this holding to be controlling in the present case.

There is a familiar rule, relied upon by the attorney general, that the presumption of prejudice, which all courts agree arises when there has been a separation, may be overcome by evidence that the jurors did not discuss the merits of the case and were not subjected to any possible influence during the separation. The problems involved in the separation of jurors have been discussed in many cases. (*People* v. *Backus,* 5 Cal. 275; *People* v. *Lee,* 17 Cal. 76; *People* v. *Bonney,* 19 Cal. 426; *People* v. *Brannigan,* 21 Cal. 337; *People* v. *Symonds,* 22 Cal. 348; *People* v. *Moore,* 41 Cal. 238; *People* v. *Thornton,* 74 Cal. 482 [16 P. 244]; *People* v. *Wheatley,* 88 Cal. 114 [26 P. 95]; *People* v. *Bemmerly,* 98 Cal. 299 [33 P. 263]; *People* v. *Dinsmore,* 102 Cal. 381 [36 P. 661]; *People* v. *Hawley,* 111 Cal. 78 [43 P. 404]; *People* v. *Adams,* 143 Cal. 208 [76 P. 954, 101 Am.St.Rep. 92, 66 L.R.A. 247]; *People* v. *Maughs,* 149 Cal. 253 [86 P. 187]; *People* v. *Cord,* 157 Cal. 562 [108 P. 511]; *People* v. *Carson,* 49 Cal.App. 12 [192 P. 318]; *People* v. *Knight,* 63 Cal.App. 63 [218 P. 79]; *People* v. *Cross,* 64 Cal.App. 443 [221 P. 684]; *People* v. *Page,* 86 Cal.App. 148 [260 P. 591]; *People* v. *Murphy,* 92 Cal.App. 729 [268 P. 927]; *People* v. *Truesdell,* 124 Cal.App. 360 [12 P.2d 476]; *People* v. *Martin,* 87 Cal. App.2d 581 [197 P.2d 379]; *People* v. *Lloyd,* 98 Cal.App.2d 305 [220 P.2d 10].)

In the leading case of *People* v. *Brannigan,* 21 Cal. 337, it was conceded there had been a separation of the jury after submission and the rule was laid down that the burden was upon the People to prove defendant was not prejudiced rather than upon him to show prejudice. It was said that the separation raised a presumption of prejudice which might be

overcome by evidence as to the conduct of the jurors and others with whom they had been in contact. There being no such showing by the People the judgment was reversed. The nature of the separation was not shown, although, if the jurors had been sent home for the night, the opinion doubtless would have stated that important fact.

The question whether the accused has suffered prejudice is a judicial one and has always been so regarded. If it is a factual question it must be judicially determined under recognized procedure. There can be no judicial determination of a fact in question when there is no opportunity to present the evidence on both sides of the issue. This does not mean that the opposing parties must have equal opportunities, but it does mean that there must at least be a reasonable opportunity for verification or refutation on the part of each party of the evidence produced against him; otherwise the determination would be of no more value than one made ex parte. Our courts have rejected the idea that the burden is ever upon the accused to prove actual prejudice from separation of the jury. Manifestly, he could not sustain that burden when evidence of the facts was unavailable to him. And it has been emphasized, when only the jurors know what their conduct has been, that their unsupported affidavits are the weakest sort of evidence. When there has been a prolonged separation, during which jurors moved about at will, affidavits or testimony of the jurors that they had not discussed the case or been guilty of other misconduct would be a mere formality, and not capable of refutation by the accused. To give such evidence effect as proof of absence of prejudice, against a helpless defendant, would be as illogical as to give the same effect to the presumption that the jurors had faithfully performed their lawful duties. In *People* v. *Backus,* 5 Cal. 275, the court said (p. 275): "During the trial of this case in the Court below, after the Court had adjourned, and directed the jury to be kept together under the control of an officer, one of the jurymen absented himself from the jury room without the custody of the Sheriff for the period of two hours.

"The statute of this State provides that the jury may separate by leave of the Court. In the present case the juror left his fellows without such permission. How far this would vitiate the verdict is a disputed point among the Courts of the various States of the Union; it is universally conceded that it is an irregularity. In New Hampshire, Connecticut,

North Carolina and Indiana, it has been held that the mere separation of the jury is not sufficient of itself to authorize the Court to set aside the verdict, but that the party must show facts and circumstances tending to establish improper influence, while in Virginia and Tennessee it has been held that if the separation was such that the juror might have been improperly influenced by others, the verdict would have been set aside.

"The latter rule we think is the correct one, because it would be impossible in almost every case for the prisoner to establish the fact of any corrupt or improper communications between the juror and others. This doctrine is substantially sustained by the Supreme Court of Massachusetts in the case of the *Commonwealth* v. *Roly,* 12 Pick., 519 and in a late case (decided in 26 Miss., 78—*Organ* v. *The State,*) in which the whole doctrine is reviewed. In the latter case the Court says:—'If any separation is to be allowed without incurring the imputation of irregularity—for what length of time, and for what purpose may it be; how frequently may it be practiced, and to what distance may it extend—by what means are communications between the juror and other persons which may take place, and which must necessarily be secret, to be disclosed?'

"In the present case the consequences of the jury's separation is sought to be avoided by the affidavit of the juror himself, that he left the room by consent of the prisoner's counsel, and that no improper communication had taken place between himself and anyone else during his absence. The first fact is denied by the appellant's counsel; and, even if it was true, we are at a loss to conceive how his consent could excuse the consequences of an act which could only be permitted by the Court. Neither can the affidavit of the juror be admitted to purge his conduct from the imputation of corruption or impropriety—for, say the Court in the case just cited, if a party had been guilty of any corruption he would not hesitate to conceal the same by direct perjury."

The courts have been accustomed to classify as separation of jurors all manner of removal of one or several jurors from the immediate presence of the others. Many of the occurrences have been of such a trivial nature as not to constitute separation in a legal sense. Technical and brief separations, when they deserve that appellation, are of common occurrence and unavoidable. Many of those described in the cases listed above were of that character. All the au-

thorities which have applied the rule that a presumption of prejudice may be overcome by evidence to the contrary were necessarily grounded in the fact, established or assumed, that the conduct of the jurors, during the separation, was susceptible of proof and a subject of judicial determination. Therein lies the fundamental distinction between the factual situations in which the rule has been given application and the situations in the Hawley case and the present case. The range is so great between a separation consisting of a dispersion during which the jurors remain in sight and hearing of each other and a separation overnight that each case must be judged upon its own facts. ██ However, we believe it to be fundamental in our jurisdiction that where the jurors after submission have been completely separated overnight, or otherwise under circumstances which would bring them into contact with many people, and where the defendant would have no opportunity to prove whether they had indulged in discussion of the merits of the case, or had been guilty of other misconduct, a conviction should not be allowed to stand. If it be said that there may be emergencies in which it would be impossible or impracticable to keep the jurors together until they have resolved a verdict we would reply that in such rare instances a mistrial could be declared. Arrangements for the convenience of jurors must be kept within lawful procedure.

██ If it should be contended that a defendant under such circumstances waived his right to claim irregularity in the separation of the jury by consenting to it, our answer would be that he could not waive the right to have the statutory procedure observed. The Hawley case and the authorities therein cited so held, and there is no want of additional authority to the same effect. (*Dibbles* v. *State* (1921), 89 Tex.Crim.App. 427 [231 S.W. 768]; *Osborne* v. *State* (1939), 136 Tex.Crim.App. 125 [124 S.W.2d 366]; *Hepp* v. *State* (1934), 46 OhioApp. 360 [188 N.E. 664]; *State* v. *Lamoreaux* (1932), 62 N.D. 55 [241 N.W. 595]; *People* v. *Casino* (1920), 295 Ill. 204 [129 N.E. 145, 34 A.L.R. 1102].)

The jury system, which our Constitution and statutes preserve in all respects which embrace its fundamental principles and established procedure, is an institution in which all the people of the land have a vital interest. It is safe to say that among the features which have led to its preservation, and the confidence which is generally reposed in it, none have been of more importance than the rules by which the

conduct of jurors is regulated and the strictness and vigor with which the law has shielded them from improper influence. Even now, in capital cases, it is customary that the jurors be sequestered from the time they are empaneled, as was the invariable custom under the common law. It is unnecessary to enumerate reasons for keeping the jurors together after the cause has been submitted. The state through its Legislature, adopted the then existing practice in the beginning and has never departed from it. That is sufficient reason for adherence to the statutory procedure.

■ Although a defendant may waive rights which exist for his own benefit, he may not waive those which belong also to the public generally. If the prosecution and the defendant should be permitted to adopt their own procedure, wholly at variance with that prescribed by statute for the conduct of criminal cases, confusion and uncertainty would exist, and if it should become the custom to permit separation of jurors after submission of the cause, the tendency would be toward a lessened respect for and confidence in the independence of jurors and the justness of their verdicts. The law is mandatory. It does not give the parties the right to agree to a separation. If that exception is to be written into the law it must be by the Legislature, not the courts. The principle that jurors should be kept together after the cause has been submitted is one that does not change with the times. It does not call for "modernization" upon any theory that human nature is no longer subject to the frailties and faults which have made it desirable throughout our history to keep jurors together while they deliberate upon their verdict.

The views we have expressed, and those which follow, are not stated as being applicable in all respects to civil cases. The principles are not the same as in criminal cases. (*McDowd v. Pig'n Whistle Corp.*, 26 Cal.2d 696 [160 P.2d 797].)

There is another feature of the case pertaining to defendant's acquiescence in the separation of the jury which we think merits consideration, although it is not decisive of any point of the case. The proceedings at the time the jurors were allowed to go to their homes are set out below.[1] ■ The suggestion for separation of the jury came from the court,

---

[1]The jury had deliberated from 10:45 a. m. until 4:10 p. m. at which time the following occurred:

"THE COURT: Do you think there is any chance of the jury reaching a verdict by further deliberation? THE FOREMAN: I don't right now. THE COURT: What I had in mind was this: if counsel would agree to

with the statement that counsel would probably consent to it. We do not think the consent, given under such circumstances, should be regarded as voluntary. Consent to waiver of a right of the accused in a criminal case should be entirely free from compulsion. If counsel in open court are requested, in the presence of the jury, to consent to an irregularity of procedure that is exclusively for the convenience of the jurors, they are not free to withhold consent. In *People* v. *Casino, supra,* 295 Ill. 204 [129 N.E. 145, 34 A.L.R. 1102], the court was considering the failure of the defendant to object, which it was contended amounted to consent to the separation of the jury before the cause was submitted. The court stated to the jury that he was not going to enforce the rule under which the jury would be kept together in charge of an officer, and defendant's counsel registered no objection. The court said (p. 147 (129 N.E.)) : "This cannot be taken against the plaintiff in error as a waiver of his right to have the rule enforced. For him then to have made a request that the rule be enforced was in all human probability to be done at the risk of prejudicing the jury against him. Men on juries, even in capital cases, are still men, only, and do not take kindly in all instances to the enforcing of this rule. They like their liberty even as jurors, and are prone to believe that such a rule is useless and only an infringement upon their personal liberty and perhaps a reflection upon their integrity and ability to act under all circumstances as fair and impartial jurors. When placed under the same circumstances as the plaintiff in error was in this case, any experienced lawyer or judge must concede that it would be better diplomacy for a defendant to not place himself in the position of an objector to the court's action, even though his positive desire and wish might be ever so

stipulate, and I think probably they would, that you might separate and go home tonight and then come back tomorrow morning at ten o'clock and resume your deliberations, do you think there is a chance of you getting together and reaching a verdict? If you are reasonably certain there is no chance, there is no point in it. THE FOREMAN: What I meant is that at the present time it seems a deadlock, but I don't know. It is possible with a little more deliberation on it that it might bring forth a verdict. THE COURT: Gentlemen, would it be agreeable to both of you to stipulate that the jury might separate and go to their homes and come back tomorrow morning at ten o'clock to resume their deliberations? MR. WHICHELLO: We will so stipulate. MR. SMITH: Yes, your Honor. THE COURT: Then I am going to let you go home and separate, and you will come back tomorrow morning, including the alternate juror, and resume your deliberations and with the thought or hope that you might arrive at a verdict."

strong to have the rule enforced and although he might believe that he would be in serious danger of being prejudiced thereby. The court had no right to thus take advantage of plaintiff in error's silence, and the doing so was a violation of the plaintiff's right without any justification whatever. That plaintiff in error may have been prejudiced by the action of the court cannot be gainsaid. . . . Whether or not the plaintiff in error was actually prejudiced by this action of the court this court can never know, and it is too much to expect of plaintiff in error that he would or could know whether he was actually prejudiced.'' Whether the question of waiver be as to consent by silence, or expressed consent, the principle is the same. It is better that such matters be taken up out of the presence of the jury. It is a matter that we would not mention except for the fact that we have heretofore referred to defendant's consent as if it had been given voluntarily, and it seems advisable to make this qualification lest it be assumed, at some future time, that we deemed it to have been given freely.

 Section 4½ of article VI of the Constitution does not apply in the case of a substantial abridgement of the right to a jury trial. (*People* v. *Diaz*, 105 Cal.App.2d 690 [234 P.2d 300].)

Section 1258 of the Penal Code, enacted in 1872 and found in the chapter governing appeals to the Supreme Court, reads: ''After hearing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties.'' The decision in the Hawley case was of necessity a holding that the separation of the jury affected a substantial right of the defendant. Since there has been no material change in the statutory law, that decision directly supports our conclusion that the proceedings now under review resulted in a miscarriage of justice.

The order denying the motion for new trial is reversed. There being no judgment or sentence the purported appeals therefrom are dismissed.

Wood (Parker), J., and Vallée, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 28, 1952. Gibson, C. J., and Spence, J., were of the opinion that the petition should be granted.