[Crim. No. 6568.   In Bank.   Jan. 29, 1960.]

In re ROBERT WINCHESTER, on Habeas Corpus.

T. N. Petersen for Petitioner.

Stanley Mosk, Attorney General, Doris H. Maier and Raymond M. Momboisse, Deputy Attorneys General, for Respondent.

WHITE, J.—The petitioner was convicted by a jury of a violation of section 270 of the Penal Code, which makes it a misdemeanor for a father to wilfully fail to provide for his illegitimate child. Imposition of sentence and judgment were suspended and he was placed on probation, the original terms of which included a suspended six months' county jail sentence. He unsuccessfully appealed from the order granting probation[1] and from the order denying his motion for a new trial. Subsequently, for violation of the terms of

---

[1]Under Penal Code, section 1237, subdivision 1, a defendant may appeal from an order granting probation.

his probation he was committed to jail under a modified probation order which included the serving of a six months' county jail sentence. Eight days later he was released on bail by order of this court pending the determination of his application to this court for a writ of habeas corpus, and an order to show cause was issued to the sheriff of Merced County. For the reasons hereinafter stated this court has concluded that the writ of habeas corpus should not issue and that the petitioner should be remanded to the custody of the sheriff.

This is a collateral attack upon the orders of the trial court, based upon the same grounds as those urged on the motion for new trial and on the appeal. They are: unlawful separation of the jury after it had retired to consider its verdict; a partisan atmosphere in the courtroom and prejudicial, partisan remarks by the trial judge; errors of law in the admission of evidence; and prejudicial restriction of the petitioner's right of cross-examination. The return to the order to show cause urges that the writ of habeas corpus is not available to this petitioner, and that the determination of these issues upon the appeal is conclusive. It also denies that there was any deprivation of due process or denial of any fundamental constitutional rights at the trial.

██ Habeas corpus has become a proper remedy in this state to collaterally attack a judgment of conviction which has been obtained in violation of fundamental constitutional rights. (*In re James,* 38 Cal.2d 302, 309 [240 P.2d 596]; *People* v. *Adamson,* 34 Cal.2d 320, 327 [210 P.2d 13]; *In re Major,* 135 Cal.App.2d 405, 411 [287 P.2d 359]; *People* v. *Sorensen,* 111 Cal.App.2d 404, 405 [244 P.2d 734].) ██ The denial of a fair and impartial trial amounts to a denial of due process of law (*People* v. *Robarge,* 111 Cal.App.2d 87, 95 [244 P.2d 407]) and is a miscarriage of justice within the meaning of that phrase as used in section 4½, article VI, of the Constitution of this state. (*People* v. *Hall,* 199 Cal. 451, 458 [249 P. 859]; *People* v. *Diaz,* 105 Cal.App.2d 690, 697-698 [234 P.2d 300]; *Cowlin* v. *Pringle,* 46 Cal.App.2d 472, 476 [116 P.2d 109]; *Union Oil Co. of California* v. *Hane,* 27 Cal. App.2d 106, 110 [80 P.2d 516].) ██ Fundamental jurisdictional defects, like constitutional defects, do not become irremediable when a judgment of conviction becomes final, even after affirmance on appeal. (*People* v. *Thomas,* 52 Cal.2d 521, 528 [342 P.2d 889].) However, the petitioner must show

that the defect so fatally infected the regularity of the trial and conviction as to violate the fundamental aspects of fairness and result in a miscarriage of justice. (*People* v. *Crooker,* 47 Cal.2d 348, 353 [303 P.2d 753].)

Habeas corpus is not an available remedy to review the rulings of the trial court with respect to the admission or exclusion of evidence, or to correct mere errors of procedure occurring on the trial (*In re Lindley,* 29 Cal.2d 709, 723 [177 P.2d 918]) committed within the exercise of an admitted jurisdiction (*In re Porterfield,* 28 Cal.2d 91, 99 [168 P.2d 706, 167 A.L.R. 675].) It will not lie ordinarily as a substitute for an appeal (*In re Byrnes,* 26 Cal.2d 824, 827 [161 P.2d 376]) nor as a second appeal. The appeal herein was taken on a settled statement. In referring to the evidence here claimed to have been erroneously admitted, this statement recites that ''This testimony was given by witness as a part of a conversation between witness and Defendant. Although Defendant's counsel apparently started to object to this answer, no objection was actually made. Further, no Motion to Strike or to have jury disregard testimony or Motion for Mistrial was made.'' It is apparent that any error in regard to the admission of this testimony was waived.

Whether or not an erroneous denial of the right to fully cross-examine a witness is a denial of due process depends on the facts of the particular case. (See discussion and cases cited in *Priestly* v. *Superior Court,* 50 Cal.2d 812, 822-823 [330 P.2d 39], concurring opinion.) The settled statement does not refer to the claimed restriction upon the petitioner's right to cross-examine witnesses for the prosecution. Manifestly we cannot determine from the record before us that any error in this regard was so erroneous as to constitute a denial of due process or a miscarriage of justice.

The two main inquiries before us therefore, are whether there was a partisan atmosphere at the trial which deprived the petitioner of a fair trial and whether the separation of the jury so impaired his right to a trial by jury as to require the granting of a new trial.

The petitioner alleges that throughout the trial an adverse crowd of persons were talking and commenting on the proceedings in the presence and hearing of the jury during court sessions as well as during recesses; that during the final argument of defense counsel there was some muffled heckling going on in the rear of the courtroom; and that when

the judge was requested by defense counsel to admonish these spectators the judge replied, in the presence of the jury, "Well, they have a right to their opinion as much as anyone else." At the hearing on the motion for new trial a corroborating affidavit was filed by associate defense counsel. However, the trial judge denied that there had been any such activity by the spectators; denied that he had made the remarks attributed to him, and directed the reporter to include his denial in the record. This issue was before the appellate department of the superior court on conflicting evidence. Its determination is therefore conclusive. The additional affidavits now presented to this court by the respondent in support of the judge's version of this occurrence are merely cumulative.

With reference to the separation of the jury, at the hearing on the motion for new trial the petitioner called the bailiff as a witness. He testified that after the jury had retired to consider its verdict he had taken them to a restaurant for dinner and that while there three of the jurors had obtained permission from him to telephone their respective homes that they would be detained. The telephone was located in the kitchen 30 to 40 feet from where the bailiff was seated. There was an uncovered opening between the kitchen and the dining room. The calls lasted about one minute each, only one juror leaving the table at a time for this purpose. The bailiff remained seated at the table with the other jurors. He was within sound of the voices of the jurors who were telephoning. He admitted he could not distinguish what any of them said, and that he had no personal knowledge of the telephone numbers called, the persons spoken to, nor the conversations which took place. No evidence in rebuttal was offered by the prosecution at that hearing.

On the appeal the prosecution offered in rebuttal affidavits of the three jurors who had made the telephone calls, in each of which it was stated that the affiant had called home, the person with whom the telephone conversation took place, and that no mention was made of the petitioner's case. Where only the jurors know what their conduct has been, their unsupported affidavits are the weakest type of evidence. (*People* v. *Backus,* 5 Cal. 275, 277; *People* v. *Werwee,* 112 Cal.App.2d 494, 497 [246 P.2d 704].) This evidence was not properly before the appellate court. (*Broads* v. *Mead and Cook,* 159 Cal. 765, 768-769 [116 P. 46, Ann.Cas. 1912C

1125] ; *Pardy* v. *Montgomery*, 77 Cal. 326, 327 [19 P. 530] ; *Solomon* v. *Solomon*, 118 Cal.App.2d 149, 152 [257 P.2d 760].)

The return to the order to show cause herein contains the affidavits of these three jurors, plus affidavits of the members of their families to whom they talked during these telephone conversations, each affirming that no mention was made of the petitioner's case during such conversations.

In habeas corpus proceedings the purpose is to go behind form and ascertain substance. The scope of inquiry, under proper circumstances, may embrace additional evidence received either directly or under an order of reference. (*In re Connor*, 16 Cal.2d 701, 712-713 [108 P.2d 10].)

Section 1121 of the Penal Code provides that ''The jurors sworn to try an action may, at any time before the submission of the cause to the jury, in the discretion of the court, be permitted to separate or be kept in charge of a proper officer. The officer must be sworn to keep the jurors together until the next meeting of the court, to suffer no person to speak to them or communicate with them, nor to do so himself, on any subject connected with the trial, and to return them into court at the next meeting thereof.'' Section 1128 provides that ''After hearing the charge, the jury may either decide in court or may retire for deliberation. If they do not agree without retiring, an officer must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor to do so himself, unless by order of the court, or to ask them whether they have agreed upon a verdict. . . .'' Section 1181, subdivision 3, provides that when a verdict has been rendered the court may, upon the application of the defendant, grant a new trial ''When the jury has separated without leave of the court after retiring to deliberate upon their verdict, or been guilty of any misconduct by which a fair and due consideration of the case has been prevented.''

Whether the separation of jurors without permission of the court after they have retired for deliberation in a criminal case constitutes prejudicial misconduct depends upon the circumstances of each individual case. (*People* v. *Weatherford*, 27 Cal.2d 401, 418 [164 P.2d 753] ; *People* v. *Rushton*, 111 Cal.App.2d 811, 814 [245 P.2d 536].) It was early held that if the separation was such that a juror might have been improperly influenced by others the verdict would have to be set aside. (*People* v. *Backus* (1855), *supra*, 5 Cal. 275.)

Such separation, without any showing by the defend-

ant of improper conduct, raises a presumption of prejudice and is of itself sufficient ground for granting a new trial. (*People* v. *Hawley*, 111 Cal. 78, 86 [43 P. 404].) In this state the burden of rebutting this presumption is upon the prosecution. (*People* v. *Brannigan*, 21 Cal. 337, 340; *People* v. *Werwee, supra*, 112 Cal.App.2d 494, 496-497; *People* v. *Rushton, supra*, 111 Cal.App.2d 811, 815; see annotations in 21 A.L.R. 1088, 34 A.L.R. 1212, 79 A.L.R. 821, 836.)

The affidavits of the three jurors and of the members of their families that no mention was made of petitioner's case establish that no prejudice resulted from the telephone calls. The possibility that the jurors may have been approached by some person or persons present in the kitchen is so remote that we do not believe a presumption of prejudice may be supported by that possibility alone. Accordingly we conclude that the presumption of prejudice arising from permitting the jurors to telephone has been rebutted and that petitioner suffered no impairment of his right to a fair and impartial jury.

The writ is denied and the petitioner is remanded to the custody of the sheriff of Merced County.

Gibson, C. J., Traynor, J., Spence, J., and McComb, J., concurred.

PETERS, J.—I dissent.

The majority opinion correctly states the law but then misapplies that law to the facts shown by the record.

The majority opinion correctly points out that the applicable code sections (Pen. Code, §§ 1121, 1128 and 1181, subd. 3) prohibit the separation of the jury after submission of the case to it, except by court consent or under supervision. The majority opinion also correctly points out that since 1855 it has been the law of California that "if the separation was such that a juror might have been improperly influenced by others the verdict would have to be set aside," citing *People* v. *Backus*, 5 Cal. 275. The majority opinion also correctly states that proof of an improper separation "without any showing by the defendant of improper conduct, raises a presumption of prejudice and is of itself sufficient ground for granting a new trial. (*People* v. *Hawley*, 111 Cal. 78, 86 [43 P. 404].) In this state the burden of rebutting this presumption is upon the prosecution. [Citing several authorities.]"

Thus, if the separation of the jury took place under circumstances "that a juror might have been improperly influenced"

a "presumption of prejudice" arises. This presumption the prosecution must overcome or the verdict must be set aside.

In the instant case, the improper separation of the jury is admitted. Thus, the only question is whether that separation occurred under circumstances that one or more of the three separated jurors "might have been improperly influenced by others" during the separation. The record demonstrates that this is a reasonable possibility. This being so the verdict cannot stand.

The majority opinion states the facts to be that after submission of the case, the bailiff took the jury to a restaurant for dinner; that three of the jurors, separately, were permitted to go to a telephone, unescorted, for the stated reason of calling their respective families; that the telephone used was located in the kitchen of the restaurant 30 to 40 feet from where the bailiff was seated; that there was an uncovered opening between the kitchen and the dining room where the bailiff was seated; that each call lasted about one minute; that the bailiff could see the jurors at the telephone and hear their voices, but could not hear what they said. But what the majority does not state is that the kitchen was occupied by cooks and perhaps others who may have talked to the three jurors or made references to the case in the presence of those jurors. The record shows that throughout the hearing before the trial court challenging the separation of the jury, it was assumed, at all pertinent times, by everyone connected with this proceeding, and particularly by the prosecution and by the trial judge, that during the telephone calls the kitchen was occupied by cooks and perhaps by other persons. In fact the trial judge in ruling that the "presumption of prejudice" had been overcome, based his ruling on the fact that because cooks were present in the kitchen, and could have heard the telephone conversations, it would have been highly unlikely that the jurors would have engaged in improper conversation on the telephone. (Cl. Tr. 54, 55.) The attorney general, in his brief, adopts this argument. He urges that the trial court's ruling was largely based on the fact that because the telephone calls were "made in the presence of other persons [the cooks et al.]" the separation of the jurors could not possibly have caused any prejudice to petitioner.

The majority opinion admits that the separation took place under circumstances sufficient to raise the "presumption of prejudice," but holds such presumption was rebutted in this habeas corpus proceeding by the affidavits of the three jurors

and of the three members of their families with whom they claimed they talked, to the effect that the case was not talked about during the telephone conversations.

To this argument there are several answers. The majority opinion concedes that the affidavits of the jurors "are the weakest type of evidence." The affidavits of the members of their families to whom they talked during these telephone conversations would seem to be in the same category. Yet the state did not produce or offer any excuse for not producing additional evidence of a higher nature which was available, that is the testimony of the cooks and probably others who, the trial judge and the attorney general concede could have overheard the conversations. In such a situation section 1963, subdivision 6 of the Code of Civil Procedure is applicable. It provides that it is to be presumed "That higher evidence would be adverse from inferior being produced." Thus, the "presumption of prejudice" was not rebutted by the affidavits offered.

The presumption of prejudice was not rebutted for another reason. There is no showing of any kind that those in the kitchen did not talk to the jurors about the case, or make remarks about the case in the presence of the jurors. The jurors' affidavits do not deny that the cooks in the kitchen talked to them, nor have any affidavits of the cooks been filed. Under these facts the reasonable possibility exists that these three jurors may have been improperly influenced by biased members of the restaurant staff. Certainly, it is a possibility that the cooks, in the presence of the jurors, may have said something to those jurors about the case. These facts, under the very rules of law set forth in the majority opinion, require the issuance of the writ. Certainly, it was not incumbent on Winchester to prove that the cooks had talked to the jurors about the case. To the contrary, it was incumbent upon the prosecution to rebut the presumption that they had. This the prosecution did not do. Thus the case is really a very simple one. Since the prosecution has not produced evidence to rebut the presumption of possible misconduct of persons other than those to whom the telephone calls were made, the prosecution has not sustained its burden. The possibility exists that one or more of the three separated jurors "might have been improperly influenced by others." This being so, and that possibility being reasonable and not being rebutted, the writ must issue.

The majority opinion seeks to overcome this argument by the simple statement that the "possibility that the jurors may have been approached by some person or persons present in the kitchen is so remote that we do not believe a presumption of prejudice may be supported by that possibility alone." What makes that "possibility" " remote"? It is not only a possibility but it is a reasonable possibility. It is strengthened, if it needs strengthening, by the fact that the record shows that this case had aroused great public interest in this small community and had caused expressions of feelings adverse to petitioner. While the majority opinion correctly points out that the trial judge denied the improper conduct attributed to him by counsel for petitioner, the record also includes his admission that he was required to, and in fact did, admonish the spectators during the trial when such spectators audibly expressed their feelings adverse to Winchester.

Under these circumstances, it seems clear to me that the "presumption of prejudice" arose and has not been rebutted. Thus, in my opinion, the writ should issue.

There is another factor to be considered. Although the charge against petitioner was failure to support a minor child, the basic issue was paternity. Although normally that issue is triable in the superior court (Civ. Code, §§ 196a and 231), because failure to support is a misdemeanor triable in the justice court, it has been held that that court can and must determine the issue of paternity. (*In re Clarke*, 149 Cal.App. 2d 802, 808 [309 P.2d 142]; *Silva* v. *Justice Court*, 160 Cal. App.2d 650, 651 [325 P.2d 116].) If it be assumed that such cases correctly state the law, it means that if the present adjudication stands, as between defendant and the State of California, there is a final adjudication of paternity that will become res judicata on that issue. At the trial, defendant's basic defense was that he is not the father of the child. Thus, unless this adjudication is set aside, defendant, as against the state, will be forever estopped from raising the issue of paternity. Under such circumstances great care should be taken to see that Winchester's rights are fully protected. Included in those rights is the right to a fair trial before a jury that under no reasonable possibility may have been improperly influenced. Such possibility here exists.

Inherent, although unexpressed, in the majority opinion is the thought that by granting petitioner's application this court might be doing violence to the rules and customs which have developed since the inclusion of both sexes on juries,

and which are intended to promulgate efficient deliberation without offending public morals or convenience. By deciding this case upon the grounds set forth in this dissent, a just result may be reached without doing violence to any such rules or customs. Such determination would have the additional effect of enforcing those rules which were established at common law (and subsequently codified in this state) as safeguards against improper extraneous influences on a jury. The sanctity of a jury trial must be protected.

I would issue the writ.

Schauer, J., concurred.

Petitioner's application for a rehearing was denied February 24, 1960. Schauer, J., and Peters, J., were of the opinion that the application should be granted.